UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUETRICIA FREEMAN BECKER,
TAMBITHA BANKS, and WILLIE
BLANKS, individually, and on behalf of a
class of persons similarly situated

        Plaintiffs,

v.                                                Case No.:  2:18-cv-195-FtM-38UAM

THE CITY OF FORT MYERS,
RANDALL P. HENDERSON, JR.
and SAEED KAZEMI,

        Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendants City of Fort Myers' Motion to Dismiss the Second Amended Complaint (Doc. 64) and Plaintiffs Luetricia Freeman Becker, Tambitha Blanks, and Willie Blanks' Response in Opposition (Doc. 83).[2]  Most of the issues and facts are unchanged from the last motion to dismiss, and the Order on that motion (the "Order") (Doc. 61) is referenced where relevant below.  For these reasons, the Court again grants and denies in part the dismissal of certain claims in the Second Amended Complaint (the "Complaint") (Doc. 62).

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.
[2] Plaintiffs are collectively called "Becker" below.

## BACKGROUND[3]

This case is about dumping sludge on a parcel of land in Fort Myers' Dunbar neighborhood (the "Site"). (Doc. 62 at 7). As a by-product of its water treatment process, the City produced arsenic-contaminated sludge. (Doc. 62 at 6-7). "[O]ver the course of several years," the City dumped sludge on the Site. (Doc. 62 at 7). In all, around 25,000 cubic yards of sludge were disposed of around the Site, which was neither lined nor covered. (Doc. 62 at 7, 12). Now, the sludge remains on the Site leaking arsenic into the soil and ground water in the area. (Doc. 62 at 8-9, 12-13). Over the years, the Florida Department of Environmental Protection ("FDEP") took soil and ground water samples in the area, confirming high levels of arsenic. (Doc. 62 at 8-10). Also, there is a risk of nearby residents inhaling arsenic dust from the Site. (Doc. 62 at 14-16). The arsenic poses several serious health concerns for people near the Site such as cancer and birth defects. (Doc. 62 at 13-16). On these facts, the Complaint alleges two claims under the Resource Conservation Recovery Act ("RCRA") and six state law claims for negligence, strict liability, nuisance, and medical monitoring. (Doc. 62 at 18-32).

## LEGAL STANDARD

A complaint must recite "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a

---

[3] These are the facts pled in the Complaint (Doc. 62), which the Court accepts as true. *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A facially plausible claim allows a "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* So the pleading must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## DISCUSSION

### A. Count 1: Open Dumping Under RCRA

The City moves to dismiss Count 1, which alleges RCRA open dumping. Mostly, the City makes the same argument from the last motion to dismiss—Becker fails to allege any dumping after Congress passed RCRA. (Doc. 64 at 6-9). Becker again counters the sludge disposal is ongoing because of its continued environmental effects. (Doc. 83 at 3-5). But the Complaint still fails to allege any post-RCRA dumping. The Order explained at length why an open dumping claim fails for that reason. (Doc. 61 at 5-11). Because the Court already dismissed Count 1 for the same reason, this dismissal is with prejudice. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074-75 (11th Cir. 2017).

### B. Count 2: Imminent and Substantial Endangerment Under RCRA

Next, the City seeks to dismiss Count 2, which asserts imminent and substantial endangerment to health or the environment. (Doc. 64 at 11-16). According to the City, the Complaint fails to allege any imminent endangerment. (Doc. 64 at 11-16). Becker responds that the Complaint plausibly alleges an imminent and substantial endangerment to Becker and nearby residents in several ways. (Doc. 83 at 6-8).

3

Like the last time around, the allegations are sufficient to survive a motion to dismiss. *See* (Doc. 61 at 13-15). According to the Complaint, there is still sludge on the Site, and it is leaking arsenic into nearby soil and ground water. (Doc. 62 at 12-13). Some Dunbar residents may still use wells for ground water.[4] (Doc. 62 at 8, 13). There is a risk of people inhaling arsenic dust vented from the Site. (Doc. 62 at 14-16). And the Complaint details the potential health risks to those exposed to the arsenic. (Doc. 62 at 13-14). So the Compliant pleads possible imminent and substantial endangerment to Becker and other neighborhood residents. As the Eleventh Circuit noted, a 42 U.S.C. § 6972(a)(1)(B) claim lies when a plaintiff alleges "solid or hazardous waste *may* present an imminent and substantial endangerment to health or the environment." *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1014-15 (11th Cir. 2004) (emphasis added) (interpreting the "operative word in the statute [a]s the word 'may'"). Although it must be "imminent," endangerment "means a threatened or potential harm, and does not require proof of actual harm." *Id.* at 1015. Based on the allegations at this stage, Becker plausibly pleads the sludge *may* present an imminent and substantial endangerment. *See id.*

It is necessary to correct Becker's apparent misapprehension of the Court's previous analysis, however. As noted, the Court cannot look past the allegations at this stage, even though the City's cleanup efforts may ultimately affect the disposition of this claim. *See* (Doc. 61 at 3 n.4, 14-15). Becker now argues that endangerment is analyzed at the timing of filing the complaint, citing two non-binding cases. (Doc. 83 at 5, 7). But that is a tough sell. The statute, Supreme Court, and Eleventh Circuit all mandate an

---

[4] While the City disputes this allegation, a motion to dismiss is not the vehicle to resolve questions of fact.

analysis focused on present endangerment. 42 U.S.C. § 6972(a)(1)(B) (allowing suit against polluters when waste "may present an imminent and substantial endangerment"); *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 485-86 (1996) ("[T]he reference to waste which 'may present' imminent harm quite clearly excludes waste that no longer presents such a danger."); *Parker*, 386 F.3d at 1014 ("The section applies retroactively to past violations, so long as those violations are a present threat to health or the environment."). Consistent with the Order, the allegations of imminent and substantial endangerment today, rather than at some point in the past, are determinative here. *See* (Doc. 61 at 13-15); *see also Black Warrior River-Keeper, Inc. v. Drummond Co.*, No. 2:16-cv-01443-AKK, 2019 WL 2011396, at *22 (N.D. Ala. May 7, 2019) ("The timing of [plaintiff's] suit is irrelevant to whether there is 'imminent' endangerment.").

Next, the City tests the sufficiency of Becker's injury-in-fact allegations. (Doc. 64 at 16). The City argues none of the remaining Plaintiffs have standing to maintain the imminent and substantial endangerment claim. (Doc. 64 at 16). Becker parries that residents, including the named Plaintiffs, live near the site and adequately state this claim. (Doc. 83 at 9). To plead the injury in fact required by Article III, there must be allegations of "a harm suffered by the plaintiff that is concrete and actual or imminent, not conjectural or hypothetical." *Parker*, 386 F.3d at 1003 (quoting *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003)). Not every plaintiff must have standing on each claim; rather, it is "sufficient if one plaintiff has standing to raise . . . RCRA claims." *Id.* at 1003 n.10 (citing *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1536-37 (11th Cir. 1994) (stating "at least one named plaintiff must have standing for each of the claims")). In *Parker*, the Eleventh Circuit focused on the first named plaintiff for RCRA standing purposes and held that a

5

showing of leaking underground tanks and migrating waste onto plaintiff's property was sufficient. *Id.* Here, the allegations are enough for standing as to the three named Plaintiffs. All three live in the vicinity of the Site.[5] (Doc. 62 at 5). As discussed, the Complaint alleges an imminent and substantial endangerment to residents near the Site, including Becker. (Doc. 62 at 15-16). Thus, there is adequate standing for this claim.

In sum, Count 2 pleads enough to survive the dismissal stage.

## C. Count 5: Strict Liability

The City moves to dismiss Count 5, a state law claim for strict liability on sovereign immunity grounds. As explained in the Order, this claim should be dismissed. (Doc. 61 at 20-23). Becker again argues that Florida Statute § 376.313 waived sovereign immunity, making a broader statutory argument this time. (Doc. 83 at 10-14). But Becker still cannot overcome the Florida rule that waiver cannot be found by inference or implication. (Doc. 61 at 20-23). Additionally, the City cites a case holding that Florida Statute § 376.313 does not apply retroactively. *Cunningham v. Anchor Hocking Corp.*, 558 So. 2d 93, 99 (Fla. Dist. Ct. App. 1990) ("In order to recover [under § 376.313], appellants must, of course, prove causes of action arising after the statute's effective date."). Becker responds in a similar fashion as the RCRA claim above. (Doc. 83 at 14). But like the open dumping claim, Count 5 also fails because it does not allege dumping after the statute was enacted. So dismissal is proper again, and this dismissal is with prejudice. *See Almanza*, 851 F.3d at 1074-75.

---

[5] The definition of the Site omits reference to Jeffcott Street, where the Blanks live (Doc. 62 at 5, 7). But the Court takes judicial notice of the fact that any map shows Jeffcott Street is the southern border of the Site. *See, e.g.*, *United States v. Proch*, 637 F.3d 1262, 1266 n.1 (11th Cir. 2011) (taking judicial notice of a map containing the addresses listed in an indictment); Fed. R. Evid. 201(b)-(d).

The City moved for leave to file a reply brief (Doc. 85) limited to Count 5. Given the ruling in the City's favor, that Motion is denied as moot.

**D. Counts 3-8: Statute of Limitations on State Law Claims**

The City takes another swing at its statute of limitations argument, but it misses the mark for the same reasons. As explained in the Order, the allegations are enough to fall into a federal extension to the start of the state limitations period. (Doc. 61 at 15-18). The City's entire position boils down to this: "For a plaintiff to trigger [42 U.S.C.] § 9658's preemptive effect, CERCLA must provide a basis for recovery."[6] (Doc. 64 at 20). Becker says the City focuses on the wrong standard (Doc. 83 at 16-19), and the Court agrees.

Of course, the plain language of § 9658 is the starting point. *E.g.*, *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009). In hazardous substance cases under state law, a federal statutory exception preempts any conflicting state statute of limitations:

> **(1) Exception to State statutes**
>
> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis in original); *CTS Corp. v. Waldburger*, 573 U.S. 1, 3 (2014) ("It is undoubted that the discovery rule in § 9658 pre-empts state statutes of limitations that are in conflict with its terms."). This is an exception to the general rule that

---

[6] "CERCLA" refers to the Comprehensive Environmental Response, Compensation, and Liability Act.

state limitations periods apply. 42 U.S.C. § 9658(a)(2). "Under this structure," instructed the Supreme Court, "state law is not pre-empted *unless it fits into the precise terms of the exception*" (i.e., § 9658(a)(1)). *Waldburger*, 573 U.S. at 12-13 (emphasis added).

Consistent with the Order, the Court again concludes that the plain language of the § 9658(a) limits the universe of state law actions to which it applies. (Doc. 61 at 15-18). Specifically, a plaintiff must show the "claims arose from a 'release' of 'hazardous substances' into the 'environment,' as well as other case-specific preconditions establishing that the defendant's 'facility' falls within CERCLA." *Barnes v. Koppers, Inc.*, 534 F.3d 357, 365 (5th Cir. 2008) (quoting 42 U.S.C. § 9658(a)(1)); *see also O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1149 & n.5 (9th Cir. 2002) ("The text of § 9658 demonstrates that it was intended to reach personal injury claims brought 'under State law' so long as they meet the specific criteria of § 9658." (quoting 42 U.S.C. § 9658(a)(1)). If a plaintiff makes the showing, then § 9658 preempts state statutes of limitations that impose an earlier commencement date than the federally required commencement date. 42 U.S.C. § 9658(a)(1). Like before, Becker makes that showing, and the claims are not time-barred considering the federal commencement date and allegations. *See* (Doc. 61 at 17-18).

The City contends that the Eleventh Circuit reads more into the statute. It says "a plaintiff must establish additional elements, including that [plaintiff] incurred 'response costs' consistent with the 'national contingency plan.'" (Doc. 64 at 22 (quoting *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1302 (11th Cir. 2002); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996)). Those Eleventh Circuit cases, however, do not apply. Neither case considered this statute of

8

limitations issue. Instead, the "additional elements" from those cases are part of a CERCLA cause of action under 42 U.S.C. §§ 9607 and 9613. *Blasland*, 283 F.3d at 1302 (noting that causes of action under §§ 9607 and 9613 are identical); *Redwing*, 94 F.3d at 1496 (same). Rather, the only Eleventh Circuit cases to hint at the preemptive reach of § 9658 applied it more broadly than the Court did in the Order. *Parker*, 386 F.3d at 1016-17; *Tucker v. S. Wood Piedmont Co.*, 28 F.3d 1089, 1091-93 (11th Cir. 1994). In *Parker*, plaintiffs did not bring a CERCLA claim. 386 F.3d at 1000. Rather than discuss whether they could bring a CERCLA claim under another subsection, the Eleventh Circuit simply held § 9658 preempted state law. *Id.* at 1016-17. In *Tucker*, plaintiffs brought a CERCLA claim (Doc. 64 at 22 n.13), yet the Eleventh Circuit never mentioned that fact in the opinion and applied § 9658 without analyzing the underlying claims. *Tucker*, 28 F.3d at 1091-93. So again, the conclusion that Becker meets the stricter standard set out in *Barnes* is enough. (Doc. 61 at 15-17).

For support, the City relies on *Blankenship v. Consolidation Coal Co.*, 850 F.3d 630 (4th Cir. 2017). There, the Fourth Circuit ruled that plaintiffs must be able to assert a CERCLA claim for § 9658 to apply, focusing in part on whether the allegations support cleanup recovery costs. *Id.* at 636-37. No statutory basis for that interpretation exists. And those phantom requirements that cannot square with the statute's plain language which does not include a CERCLA claim or cleanup costs among its requirements. 42 U.S.C. § 9658(a)(1); *Barnes*, 534 F.3d at 365; *O'Connor*, 311 F.3d at 1149 & n.5. And additional language in § 9658 belies an interpretation requiring plaintiffs to show entitlement to cleanup costs. For "innocent parties," cleanup costs are recoverable through 42 U.S.C. § 9607. *Blasland*, 283 F.3d at 1301-02. *Blankenship* looks to § 9607

to decide whether a plaintiff could recover cleanup costs before applying § 9658 to the statute of limitations. *Blankenship*, 850 F.3d at 637; *see also Abner v. U.S. Pipe & Foundry, Co.*, No. 2:15-cv-02040-KOB, 2018 WL 522771, at *6 (N.D. Ala. Jan. 23, 2018). But there is a glaring problem with that approach: § 9658 specifically states, "Nothing in this section shall apply with respect to any cause of action brought under section 9607 of this title." 42 U.S.C. § 9658(a)(3). Because § 9658 does not apply to causes of action under § 9607, it would be nonsensical to view the elements of a § 9607 action as part of a necessary showing under § 9658. In short, the Court is not persuaded by the City's arguments to change course.

The City's remaining statute of limitations arguments either were rejected in the Order or are unnecessary to reach given the conclusion on § 9658. (Doc. 64 at 23-25).

Accordingly, it is now

**ORDERED:**

(1) The Motion to Dismiss Second Amended Complaint (Doc. 64) is **GRANTED in part and DENIED in part**. Counts 1 and 5 in the Second Amended Complaint (Doc. 62) are **DISMISSED with prejudice**.

(2) Defendants' Motion for Leave to File Reply (Doc. 85) is **DENIED as moot**.

**DONE** and **ORDERED** in Fort Myers, Florida this 8th day of July, 2019.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record