UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DERETHA MILLER, TAMBITHA
BLANKS and WILLIE BLANKS,
individually, and on behalf of a class of
persons similarly situated

                    Plaintiffs,

v.                                                                    Case No. 2:18-cv-195-FtM-38NPM

THE CITY OF FORT MYERS,
RANDALL P. HENDERSON, JR. and
SAEED KAZEMI,

                    Defendants.
_____

**REPORT AND RECOMMENDATION**[1]

        Before the Court is Plaintiff's Motion for an Award of Costs of Litigation Pursuant

to 42 U.S.C. § 6972(e). (Doc. 130). Though Defendants obtained judgment entirely in

their favor, and Plaintiffs obtained no relief from the Court, Plaintiffs argue they are the

"substantially prevailing party" and entitled to $224,393.75 for fees and $55,406.03 for

costs. Defendants contest entitlement to, and the reasonableness of, the requested fee

and cost award. (Doc. 133). Because Plaintiffs are not substantially prevailing parties,

their motion for fees and costs should be denied.

---

[1] Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks,
the Court does not endorse, recommend, approve, or guarantee any third parties or the
services or products they provide, nor does it have any agreements with them. The Court
is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink
does not affect this document.

**Factual and Procedural Background**

Some 50 years ago, the City of Fort Myers dumped about 25,000 cubic yards of arsenic-contaminated sludge (a by-product of its water treatment process) in a vacant field (the "Site"). (Doc. 128, p. 2). Allegedly, residents in the surrounding neighborhood—such as the Plaintiffs in this matter—did not learn about the sludge until it was publicized by the local newspaper in June 2017. (Doc. 14, ¶ 45). The next month, in July 2017, Plaintiffs (and other residents) notified the City of their intent to sue under the Florida Tort Claims Act for damages allegedly caused by the dumping of the sludge. (Doc. 14-3). And four months later, in November 2017, they also notified the City of their intent to sue under the federal Resource Conservation and Recovery Act (the "RCRA") for removal of the sludge and further cleanup, as well as civil penalties and an attorney-fee award. (Doc. 14-1). By January 2018, the City had decided to remove the sludge. (Doc. 128, p. 2 (citing Doc. 115-3)).

Nevertheless, on March 11, 2018, Plaintiffs supplemented their pre-suit notice to the City and illuminated the nature of their then-forthcoming, state-law claims by explaining that they intended to advance claims for medical monitoring, inverse condemnation, diminution of property, negligence and strict liability (Docs. 14-4). And then, on March 23, 2018, they filed suit. (Doc. 1).

At the outset, Plaintiffs advanced two claims under the RCRA: an "open dump" claim under 42 U.S.C. § 6972(a)(1)(A) for removal of the sludge and contaminated soil and groundwater as well as the assessment of civil penalties, and an "imminent and substantial endangerment" claim under 42 U.S.C. § 6972(a)(1)(B) for remediation of the site and associated ground water. (Doc. 1, pp. 16-18). They also sought certification of a

medical-monitoring class and a property-damage class for their Florida tort law claims. (Doc. 1, pp. 18-35).

Because the dumping occurred before the RCRA became law, and only continuing violations are the proper subject of an open dumping claim, the Court dismissed Plaintiffs' open dump claim with prejudice. (Doc. 61, pp. 12-13; Doc. 86, p. 3). And even though the City had removed nearly 30,000 tons of sludge and soil—and all the sludge was gone— by the summer of 2019 (Doc. 128, p. 2), Plaintiffs argued their endangerment claim should proceed to trial because the Site continued to present an imminent and substantial endangerment to health due to its purportedly contaminated soil and groundwater. (Doc. 128, pp. 3, 12-13). But finding no evidence of a pathway for human exposure to the alleged contaminant via ingestion, inhalation or skin contact (Doc. 128, pp. 13-22), and no necessity for the Court to order any remediation, the Court found the City[2] entitled to judgment as a matter of law on the endangerment claim. (Doc. 128, pp. 23-24). With all of Plaintiffs' federal RCRA claims dismissed with prejudice, the Court declined to exercise supplemental jurisdiction over the state-law claims (Doc. 128, pp. 24-26), entered judgment in the City's favor, and closed the file. (Doc. 129).

**Plaintiffs' Request for Fees and Costs Under the RCRA**

The RCRA provides in relevant part:

> The court … may award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing or substantially prevailing party, whenever the court determines such an award is appropriate.

42 U.S.C. § 6972(e). And as the parties agree, this provision states a two-pronged test

---

[2] In addition to the City of Fort Myers, its mayor and city manager are named defendants, and for ease of reference, the Court refers to them collectively as the City.

for a fee and cost award: (1) the party must be a prevailing or substantially prevailing party, and (2) the Court in its discretion must also find an award to be appropriate. (Doc. 130, p. 2; Doc. 133, p. 14).

While Plaintiffs did not obtain a judgment or decree in their favor, or any other form of judicial relief, they argue the Court should find it appropriate to award them nearly $300,000 in fees and costs as substantially prevailing parties. In support, they argue the term "substantially prevailing party" as used in the RCRA includes plaintiffs who end up realizing the objects of their lawsuits because the litigation caused—or in other words served as the "catalyst" for—the defendants to voluntarily provide the relief requested, and Plaintiffs contend it was the filing and prosecution of this lawsuit (rather than the pretrial publicity or other developments) that motivated the City to remove the sludge and remediate the Site. Thus, Plaintiffs' entire argument rises or falls on the proper construction of the term "substantially prevailing" as used in the RCRA, and whether this term is reserved for parties who obtain at least some form of judicial relief.

**Construing "Substantially Prevailing" as Used in the RCRA**

As the Supreme Court of the United States recently reasoned in *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015):

> "Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–253 (2010) (internal quotation marks omitted). The American Rule has roots in our common law reaching back to at least the 18th century, *see Arcambel v. Wiseman*, 3 Dall. 306, 1 L. Ed. 613 (1796), and "[s]tatutes which invade the common law are to be read with a presumption favoring the retention of long-established and familiar [legal] principles," *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotation marks and

ellipsis omitted). We consequently will not deviate from the American Rule "'absent explicit statutory authority.'" *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602 (2001) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 814 (1994)).

"[W]hen Congress has chosen to depart from the American Rule," its statutory fee-shifting provisions contain varying standards as to the precise *degree of success* necessary for an award of fees—such as whether the fee claimant was the 'prevailing party,' the 'substantially prevailing' party, or 'successful.'" *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 684 (1983) (emphasis added).

A "prevailing party" is "one who has been awarded some form of relief by the court." *Buckhannon*, 532 U.S. at 603. "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605. Instead, only judgments and consent decrees serve as the basis for a prevailing-party fee award because they constitute court-ordered changes in the legal relationship between the parties. *Id.* at 604. Thus, "the 'catalyst theory' is not a permissible basis for the award of attorney's fees" under statutes that authorize fee awards for prevailing parties. *Id.* at 610.

What about a standard of success that differs in degree rather than kind, such as a "substantially prevailing" party? While this modified term of art may alter the scope of eligible claimants,[3] the fundamental requirement that some form of judicial relief be

---

[3] For example, in *Sole v. Wyner*, 551 U.S. 74 (2007), the court held that even though an artist obtained a preliminary injunction allowing her event to take place as scheduled, she was not a "prevailing party" for fee-shifting purposes because the trial court had subsequently denied her request to make the injunction permanent. *Id.* at 86. But in certain circumstances it may be fair to say that a party who obtained legally temporary, though practically permanent, judicial relief "substantially prevailed."

obtained remains the same. As the United States Court of Appeals for the Eleventh Circuit noted in *Loggerhead Turtle v. Cty. Council of Volusia Cty., Fla.*, 307 F.3d 1318 (2002), the difference between "prevailing party" and "substantially prevailing party" is "generally deemed inconsequential." *Id.* at 1322, n.4. And so, in *United States v. $70,670.00 in U.S. Currency*, 929 F.3d 1293 (2019), the Eleventh Circuit rejected the notion that the catalyst theory may satisfy the "substantially prevailing" standard. There, claimants resisting the government's forfeiture action argued that they substantially prevailed because the government dismissed the action and had no intention of refiling the complaint. Disagreeing with this proposition, the Eleventh Circuit explained:

> The claimants have not substantially prevailed because a dismissal without prejudice places no "judicial imprimatur" on "the legal relationship of the parties," which is "the touchstone of the prevailing party inquiry." *CRST Van Expedited, Inc. v. Equal Emp't Opportunity Comm'n*, —— U.S. ——, 136 S. Ct. 1642, 1646, 194 L.Ed.2d 707 (2016) (citations and internal quotation marks omitted); *see also Loggerhead Turtle v. Cty. Council of Volusia Cty.*, 307 F.3d 1318, 1322 n.4 (11th Cir. 2002) (explaining that we interpret "substantially prevailed" fee-shifting statutes consistently with "prevailing party" fee-shifting statutes).

*Id.* at 1303; *see also United States v. Evans*, 561 F. App'x 877, 881 (11th Cir. 2014) (holding that even though plaintiff's "many motions seeking return of the seized property may indeed have been the catalyst" for the "government voluntarily return[ing] the money at issue," the plaintiff did not "substantially prevail" because "no relief resulting in some change in the legal relationship between [the parties] was ordered by the district court").

The Eleventh Circuit's sister courts of appeal agree with this construction. For example, construing the very same fee-shifting provision at issue here, the Ninth Circuit in *Kasza v. Whitman*, 325 F.3d 1178, 1180 (2003), held that an RCRA plaintiff neither

prevailed nor substantially prevailed because "she did not gain by judgment or consent decree a material alteration of the legal relationship of the parties." And construing a nearly identical fee-shifting provision in the federal Clean Water Act,[4] the Eighth Circuit in *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845-846 (2003), reversed a fee award because even though the plaintiff had obtained a declaration that the city violated a pollutant-discharge permit issued by the state, the plaintiff did not obtain any judicially enforceable relief.

Moreover, when Congress wants the term "substantially prevailing" in a particular statute to incorporate the catalyst test, it has amended the statute to explicitly authorize this departure from the American Rule. For example, following the Supreme Court's decision in *Buckhannon*, two federal circuit courts of appeal held that the catalyst test could not be used to satisfy the "substantially prevailed" requirement for an award of fees in a FOIA suit. *See Union of Needletrades, Indus. & Textile Employees, AFL–CIO v. INS*, 336 F.3d 200, 201, 203-207 (2nd Cir. 2003); *Oil, Chem. & Atomic Workers Int'l Union v. Dep't of Energy*, 288 F.3d 452, 453-457 (D.C. Cir. 2002). In response, Congress amended FOIA's fee-shifting provision, 5 U.S.C. § 552(a)(4)(E), to add:

> For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—
> (I) a judicial order, or an enforceable written agreement or consent decree; or
> (II) a voluntary or unilateral change in position by the agency,
> if the complainant's claim is not insubstantial.

---

[4] The CWA's fee-shifting provision, 33 U.S.C. § 1365(d), *currently* provides in relevant part: "The court … may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."

5 U.S.C. § 552(a)(4)(E)(ii). Accordingly, the catalyst theory (as codified in 5 U.S.C. § 552(a)(4)(E)(ii)(II)) became an explicitly authorized fee-shifting provision for FOIA suits filed after this 2007 amendment. *Zarcon, Inc. v. N.L.R.B.*, 578 F.3d 892, 896 (8th Cir. 2009). And without such an amendment, resort to the catalyst theory is forbidden under "substantially prevailing" fee-shifting statutes. *Id.* at 895-896.

In contrast to the FOIA statute, Congress has not seen fit to amend RCRA's fee-shifting provision, 42 U.S.C. § 6972(e), since the Supreme Court's 2001 decision in *Buckhannon*. Indeed, this fee-shifting provision has remained unchanged since it was amended in 1984 to expressly restrict fee awards to "the prevailing or substantially prevailing party," instead of simply "any party, whenever … appropriate."[5] *See* Pub. L. 98-616, Title IV, § 401(e), Nov. 8, 1984. Accordingly, RCRA plaintiffs who do not obtain any judicially enforceable relief are not entitled to any fee or cost award. *See PaineWebber Income Properties Three Ltd. P'ship By & Through Third Income Properties v. Mobil Oil Corp.*, 916 F. Supp. 1239, 1243 (M.D. Fla. 1996) (holding that, without a "decision on the merits" in its favor, an RCRA litigant is "not a prevailing or substantially prevailing party in accordance with § 6972(e)"); *see also Davis v. Jackson*, 776 F. Supp. 2d 1314, 1317-1318 (M.D. Fla. 2011) (holding that a party is not entitled to a fee award under the CWA's "prevailing or substantially prevailing party" standard unless it obtains "a judicial determination on the merits").

Notably, losing sight of statutory amendments can lead to unnecessary confusion.

---

[5] Even when the "whenever appropriate" standard is the only showing required, "a fees claimant must show some degree of success on the merits before a court may award attorney's fees." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (internal quotations and citations omitted).

For instance, because the fee-shifting provisions in the CWA and RCRA are—in their current form—virtually identical, Plaintiffs' arguments are based in large part on dicta from a post-*Buckhannon*, unpublished decision[6] of the Eleventh Circuit, in which the panel reasoned: "we have held that the catalyst theory is still viable in Clean Water Act cases." *Black Warrior Riverkeeper, Inc. v. Metro Recycling Inc.*, 613 F. App'x 877, 878 (11th Cir. 2015) (citing *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1202 (11th Cir. 2012)).[7] But the *Riverkeeper* court's citation to language in *Friends of the Everglades* about the viability of the catalyst theory in CWA cases, refers, in turn, to a discussion in *Loggerhead Turtle* about a passage from *Ruckelhaus* concerning the meaning of fee-shifting provisions that do not contain any form of prevailing party requirement, and instead authorize a court to award fees "whenever appropriate." *Loggerhead Turtle*, 307 F.3d at 1326 (citing *Ruckelshaus*, 463 U.S. at 682 n.1 (noting that in 1983, seventeen federal statutes authorized fee awards "whenever appropriate")).

*Loggerhead Turtle* held that *Buckhannon* did not extend to the fee-shifting provision in the Endangered Species Act, 16 U.S.C. § 1540(g), because the ESA allowed fee awards "whenever appropriate" and did not require the fee claimant to be either a prevailing or substantially prevailing party. *Loggerhead Turtle*, 307 F.3d at 1324-1326. Hence, *Loggerhead Turtle* did not concern the construction of the CWA or whether the

---

[6] The Eleventh Circuit's unpublished decisions do not constitute controlling authority. *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256 (11th Cir. 2016) (citing *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n.3 (11th Cir. 2007)).

[7] The discussion in *Riverkeeper* about the viability of the catalyst theory in CWA cases was unnecessary to the decision because the court held that the plaintiff was a prevailing or substantially prevailing party based on its finding that the plaintiff had obtained a consent decree—that is, judicial relief—requiring the defendant to do more than it would have anyway. *Riverkeeper*, 613 F. App'x 877, 878.

catalyst theory could be used to satisfy a "substantially prevailing party" requirement.

The discussion in *Ruckelshaus* concerned the fee-shifting provisions in the Clean Air Act and other statutes (as they existed in 1983) that similarly authorized fee awards "whenever appropriate." *Ruckelshaus*, 463 U.S. at 682. But just as the fee-shifting provision in the RCRA was amended in 1984 to add a "prevailing or substantially prevailing party" requirement, the fee-shifting provision in the CWA was likewise restricted by amendment in 1987 to include the same requirement. Pub. L. 100-4, Title V, § 505(c), Feb. 4, 1987.

So citations concerning the viability of the catalyst theory, like the one found in *Riverkeeper*, that are derived from discussions about the pre-1987 version of the CWA are unavailing—and certainly not controlling—in either post-1987 CWA cases or cases concerning other "prevailing or substantially prevailing" fee-shifting provisions. And the discussion in *Friends of the Everglades* concerning the catalyst theory is more in the nature of finding the theory unsatisfied if it were to apply. Indeed, the Eleventh Circuit held in *Friends of the Everglades* that a plaintiff who neither obtained an injunction or declaratory judgment in its favor, nor a settlement or consent decree, "did not prevail, or substantially prevail." 678 F.3d at 1202. Moreover, when recently and directly confronted with the meaning of the term "substantially prevailing," the Eleventh Circuit—in *$70,670.00 in U.S. Currency* and *Evans*—rejected any use of the catalyst theory and held that only a legal change in the relationship of the parties via judicial relief satisfies this standard. *See*, *supra*, p.6.

**Conclusion**

Though the City—as the only party to obtain any judicial relief in its favor—may

qualify for an award of fees and costs, it has graciously foregone the pursuit of any such award. (Doc. 133, p.14, n.9). And because the proper construction of the term "substantially prevailing" as used in the RCRA requires parties to obtain at least some form of judicial relief and Plaintiffs did not obtain any, the Court has no explicit authorization by statute to depart from the American Rule and grant them any fees or costs. Consequently, the Court need not reach the separate issue of whether an award would be appropriate if Plaintiffs had prevailed to any degree, or whether, if both prongs of the entitlement inquiry had been satisfied, the amount of their requested fees and costs would be reasonable. Accordingly, it is **RECOMMENDED** that Plaintiffs' Motion for an Award of Costs of Litigation Pursuant to 42 U.S.C. § 6972(e) (Doc. 130) be **DENIED**.

Respectfully recommended in Chambers in Fort Myers, Florida on August 31, 2020.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.